We'll now move on to the third case of the day, number 20-2803, Jauquet against Green Bay Area Catholic Education. And we'll hear first from Mr. Henderson. Thank you, Your Honor. I'm Brady Henderson, and I represent the plaintiff, Michelle Jauquet, and her minor daughter. And I've asked for two minutes for rebuttal. If it pleases the court, we are here today because of a young woman who had to choose between going to school and being safe from sexual harassment and bullying. As an eighth grader at one of defendant schools, plaintiff Jauquet's daughter received not just reading, writing, and arithmetic, but also the message that she was, pardon me, a skinny bitch, that she was not hot enough to be sexy, and ultimately that as a result, she should be given a noose and hang herself. Because this abuse was linked to discriminatory policy and practice, and that with deliberate indifference from defendant staff, plaintiff filed the present Title IX action under appeal today. In dismissing that action, we contend that the district court made two key errors. One, substituting a narrower set of allegations than those actually pled in plaintiff's complaint. And second, disregarding clear evidence and admission of deliberate indifference. Now, the first of these points refers to the part of plaintiff's case that deals with general practice and procedure at the school Notre Dame de Pierre or other institutions that Grace runs. And we made a variety of allegations concerning elements of policy from dress code and how it's enforced, but particularly to discipline and tolerance of behavior for males that is at times sexually objectifying, that equates to that. On that claim, what specific program or benefit from the school are you claiming that student A or IR, she's been referred to as both, didn't have the benefit of because of these alleged discriminatory policies? You allege the policies are discriminatory, but I didn't see anything in the record linking that to a deprivation to student A. And Judge, we can view that in two ways. And I think our complaint views it in two ways. One specific thing we do speak about in the complaint is plaintiff's daughter withdrawing from extracurricular activities. It's not necessarily what I think is the most significant, but I link it first here simply because it's very specific. She was a volleyball player, she was in a position to do extracurricular things and withdrew from that because of this abuse. However, in reality, the bigger issue I think is a deprivation of really the right to feel safe and well in the educational environment on equal terms with male students. It's not that she could not go to school, but she could not learn the same way and have the same opportunity to not have school have to result in mental anguish and distress simply from being there and from being sexually objectified as part of it, from being exposed to a culture where she was not valued in the same ways or viewed in the same way as male students. And then more importantly, that the administration was tacitly essentially agreeing with and supporting messages that these students were doing, of which one that we call student B or BK was perhaps most significant. Does that answer your question, Your Honor? It does. The district judge, Mr. Henderson, found that your allegations were essentially, as I read it, too vague to get a handle on. And I have two questions. One, as near as I can tell, you've made no effort in the district court or on appeal to try to amend the complaint to provide additional specifics. And I guess my from that, you asked in your prayer for relief for a permanent injunction. I'm trying to imagine what such an injunction would look like based on the case that you pleaded. So, Judge, let me deal with the first of those. The reason that we have not gone into additional specifics in amending a complaint is that even though the district court introduces this part of its ruling by saying we think this is too vague, what the court actually does, if we read on, is to substitute a narrower interpretation. And that, for instance, saying only that will address this must just, in referring to dress code, only be about I think the court's words are a certain degree of modesty. We don't know what that is. Now, the reason that we're not able to go back and say, well, here is exactly what is in these codes. Here's exactly what's enforced, is that we're talking about a combination of what is in writing and what is in practice. And there are elements and effects of that that plaintiff's daughter can be aware of, but there are parts of it that we can't prior to discovery. So, for instance, to use an example, one of the things that a key thing we complain about in the response to the sexual bullying from BK is deliberately refusing to employ the school's policy on social media and falsely stating that that policy would not cover it. So, if all we knew was there was a policy about something and we assumed that that's what the school would do, we would never have that claim in another situation. It's why it's particularly problematic here, where many of the cases that are cited ultimately by the defense or appellee and really relied upon by the court are much more about summary judgment standard for that reason. We have not had the opportunity at discovery. We don't know exactly what is going on behind the scenes as to where the problem has more to do with what's in writing and where the problem has more to do with how staff are trained and what intentions they have, which I think gets to the second question you asked about what would the elements of an injunction be. Part of the problem is it's difficult to know exactly what has to happen to solve the problem when we are not yet able to do discovery, have an answer to the complaint and figure it out. You know, where we are now is simply at a question of justiciability, not exactly which remedy is appropriate or whether a particular claim is proven. And really to I think kind of summarize our whole issue in this appeal, it's very much that. It's that the district court here is effectively applying a standard that is much more appropriate for summary judgment or even a trial verdict in terms of looking into specifics or minutia to the point of saying instead of relying on what's in plaintiff's complaint, I'm trying to figure out exactly what is or isn't proven within these allegations. And oh, I'm sorry, Judge Senev, did you have a question? Okay, was making sure I was not failing to hear you here. And that's really, I think, something that pervades, you know, both key elements of this case is, for instance, here we have a prima facie claim of deliberate indifference. We know that there was deceit. We know that there was deliberate avoidance, which is really by definition, the crux of deliberate indifference. And yet here, the district court effectively disregards that as a matter of law. And in ruling so on a 12 v six. Yes, where's the deliberative avoidance here? Well, Judge one place, and I don't think it's only one place, but as my time is limited, one place I would point to is the deliberate avoidance of regulating the social media element here. Much of the sexual harassment and bullying here is not just going on in the classroom, it's going on using student social media that is circulated amongst classmates of the students involved. And here the school has a policy that allows it to regulate that. And it's simply refusing to employ it here. And in fact, was telling plaintiffs that they simply had no policy that has continued even in pleadings. If you look in the record at the motion to dismiss, you know, the defense brings up First Amendment considerations, essentially implying they could not regulate this, even though clearly as a private school, they could. And that's where there's a deliberate choice not to, you know, make a particular decision upon how to regulate, but to simply avoid the question altogether. How you might be able to argue that there's sufficient specificity with respect to the harassment aspect of your complaint? And how about the discrimination? I just don't, I just don't see how you are sufficiently specific in this complaint to get past 12B6. Well, Your Honor, first of all, I think it's important to note that the specific harassment component of the complaint forms an example of the cultural tolerance as well, of exactly the policies and practices we're talking about here. It's one specific example of it. In this case, tolerating behavior from this and other male students, that should not be tolerated for many students, frankly, but certainly would not be from female students. Student B was suspended, right? And there's no evidence of any further harassment by student B or no allegation of further harassment by student B after that suspension. Correct? Your Honor, we believe student B, there are some other things later that it's unclear in the record exactly how much student B was involved in. And that's a function somewhat of, again, that we have this a lot of times going through social media, where it's a little bit unclear what's directed to whom from whom at times. And so I wouldn't necessarily agree with that statement that there is nothing afterwards. I think that's potentially still a matter to be determined by court. Well, I'm looking at your complaint. So okay. Maybe it doesn't foreclose the possibility, but I don't see anything. And ordinarily, in both employment and educational settings, if there are complaints about harassment brought to administrators or managers, disciplinary action is taken, and there's no repeat. That's sort of the antithesis of deliberate indifference. And Your Honor, if you're looking only at that particular slice, I understand the court's view, the notion that says, Aha, if we look only at this, here's what we get. And my apologies, my time is up. Sorry about that. But you know, here, we're talking about a variety of things. And one of them is, you know, the specific thing that said specific time, but we're also talking about exposure to widespread tolerance of the student's behavior, such as pardon the phrase, but it's the common phrase that the wide circulation of a dick pic of a, you know, explicit fact child pornographic image, that is part of what the student a in this case, my my client's daughter has to experience on a daily basis and understand is tolerated in the environment where she is supposed to be able to have an expectation of safety and welfare, equal to that of male students. Thank you, Mr. Anderson. Specific for the defense. Yes. Good morning, Your Honors. And may it please the court. I'm Tony Stefik of Davidson Kieltho. And I'm here on behalf of Green Bay Area Catholic Education, the appellee in this case, who I'll refer to as grace throughout our arguments. I'll also refer to Notre Dame, the pier, which is one of the schools that's within the grace system. We're here today to, of course, respectfully request that the court uphold the district court's dismissal of, of the plaintiff's complaint via motion to dismiss. And, you know, I want to start off by saying, of course, any instance of student on student bullying or harassment is, is incredibly unfortunate and inexcusable from the students perspective. However, we have very clear roadmaps through the Supreme Court's decision in Davis, all the way down to many recent decisions of this court as to what the school's obligations are with regard to responding to certain circumstances of bullying or harassment. And, and the plaintiff's own complaint here goes in the sufficient detail, whereas a matter of law, the court can find that, that grace and Notre Dame is absolutely indifferent to the situation between student B and student A over a month long period, there were at least eight conversations. Student B was suspended for three days. There were other actions taken. And as, as judge Hamilton pointed out, there's no allegation in the complaint that after the situation was addressed, that there was any further bad behavior by student B towards student A. The, the manner in which grace and Notre Dame Depeer handled it, took care of the issue. As for the generalized allegations of a discriminatory culture, or however the, the appellant wants to define that, I was very intrigued by some of your questions about that there aren't any factual allegations of how that impacted the plaintiff, the appellant's daughter directly. And there are no allegations in the complaint about the impact that these alleged discriminatory policies and practices, which just for the sake of the record, of course, grace and Notre Dame Depeer strenuously deny. But this was the plaintiff's responsibility to adequately plead those claims. If those facts existed, they needed to have been pled. And in that regard, the recent decision of Doe versus Columbia College Chicago is really instructive. I want to point to just a brief excerpt on page 855 about a plaintiff cannot rely on these generalized allegations alone, but must combine them with facts particular to his case to survive a motion to dismiss. We don't have those particular facts here. We have a three general allegations of, to summarize briefly, and the best I can summarize it, boys being treated better than girls. And we have no facts alleged how that actually impacted appellant's daughter in any way, shape, or form. What do you do with Mr. Henderson's reply to my earlier question that really we have one count here under the federal statute and that we can take the specificity and the harassment allegations really as supportive of the discrimination aspect of the complaint as well? I disagree with that position, your honor. And I think that's an excellent question. That's a logical leap in reviewing a complaint that isn't sustainable under the Title IX precedent. Of course, there is a each other. And if the pleading standard was such that you could allege a student-on-student harassment situation and then allege some generalized allegations that there was an omnibus discriminatory culture at a school, then any student-on-student harassment allegation could also bootstrap in a generalized discrimination allegation. And that's not a tenable position. You would agree that we are operating under Rule 8 here, is that correct, with respect to the specificity of the allegations in the complaint? I would agree with that, your honor. Yep. And there are no special rules of specificity with respect to Title IX matters. There aren't. It's not like a securities fraud case where you have to have that kind of increased level. However, this is what I'm concerned about. In the 80s, this court adopted a rule that you had to have very specific allegations in Section 1983 complaints. And we dismissed a lot of Section 1983 complaints under that rule until the Supreme Court smacked us real hard and said, you're wrong, period. And it seems to me that we may be heading down that road now with respect to Title IX cases of really demanding more than Rule 8 requires. And I wonder if we're setting ourselves up for another fall. What's your view of that? Well, I think your concern, your honor, is a good one. But when you look at this specific complaint and when you look at the precedent, particularly the Doe versus Columbia College precedent, right, there's been no overruling of the generalized position that conclusory allegations in and of themselves don't allow a complaint to survive a motion to dismiss. And when you look at the three subparagraphs in this lengthy complaint that set forth the apparent basis for the generalized discrimination, these are all conclusory allegations. They're not allegations of fact. Let me see if you could help me with one follow-up question. And this goes to the harassment part of the complaint. I really, you put a great deal of emphasis on the fact that they reacted. And it brought up in my mind, conjured up in my mind, another area where we use deliberate indifference, i.e. the Eighth Amendment. We have some precedent that says as long as there's action by the prison medical department, it's sufficient. They did something. Whether it was effective or the appropriate thing sometimes gets lost in the shuffle. With respect to Title IX here, how do you, would a lawyer plead a case where it's pretty clear that what the school district did was slow walk the complaint? There is a sense of that in this maybe, I don't know. But suppose what the gist of the complaint is, is that, yeah, they did a lot of things on the surface. They punched all the buttons in the handbook, in the Title IX handbook, but what they were doing was slow walking the case while people suffered. How do you plead that under your view of the case? Well, every situation is different, of course, Your Honor. And the facts... There's an allegation in this here that the principal took the perpetrator aside and coached him as to how to help her make this disappear. That's what I'm worried about. Well, that is an allegation in the complaint, but when you look at this complaint as a whole, and when we match that with the prior precedent of, schools have a wide discretion as to how to address every situation. Well, that's almost poetry though, isn't it? I mean, schools are, as Title VII makes it, it's a congressional judgment. The schools have to be held responsible in this area. Right. They have to be held responsible, but only if they're deliberately indifferent. And that, when you look at the standard, and I realize I'm over... No, I'm not over my time. When you look at the standard, it's, was the reaction clearly unreasonable? And the Supreme Court in Davis said there can be situations where as a matter of law, the court can find that a response was not clearly unreasonable, and that the school who's in the best position to understand the entire situation has wide leeway in addressing the specific situation. Now, when I walk it back to this case, the first allegation of wrongful conduct, which is a social media allegation outside of the school context, that was on December 11th. By December 18th, the boy was suspended for three days. And over a period of December 11th through January 8th, there were at least eight conversations or meetings between the parents and the school, which included the school's principal, the grace system president, the grace board of trustees, parents, as well as a police officer. And in that period, we've got to remember there was a Christmas break as well, which was at least a week and a half. And actually, Christmas was on a Wednesday that year. The school was out of session for two full weeks. They weren't in school from December 20th until January 6th. So all of that... I understand your case that way, but I still don't understand how under the law you'd like us to apply the... And there are a lot of parents in this particular situation. They have a meeting with the principal, they come back and say, I got patted on the head. Well, the precedent is very clear in that a parent very well may not be happy with the way that a school resolved things. But that's not the standard. The standard is not that a parent wanted a certain thing and didn't get it. The standard is, was the school deliberately indifferent? And we would position in this case that it wasn't. I realize I'm at my time and I don't want to go over. So thank you for the opportunity. And also, I want to thank your staff. They were really helpful in making sure today went off without a hitch. So thank you. Thank you, Mr. Stefik. Mr. Henderson, I think your time had expired, but if you'd like another minute for any rebuttal, you may have it. Thank you, Your Honor. I appreciate that. Just to very briefly look at two things. One is just to note to the court that we're not talking about garden variety bullying, so to speak. Not that that's okay, but we're talking about something that actually directly brings up issues of literally life and death. It's tantamount to a death threat at one, at least at one, if not two points. By definition, that should create some objective harm that's significant here. If I have to go to school knowing that my very life is being marginalized, it's a big deal. Finally, Mr. Stefik used the term, take care of the issue, right? This took care of the issue when the suspension happened. By Grace's own admission, the only issue they sought to take care of was what they perceived as the educational disruption, not the plaintiff's daughter's needs as a victim, not the actual harm that the abuse caused. They literally turned a deliberate blind eye to that, looking only at what they felt was their core educational function, not helping her. Okay. Thank you very much. Our thanks to both counsel. The case is taken under advisement.